**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-00328-001-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Francisco Lopez-Reyes, | |
| Defendant. | |

Defendant Francisco Lopez-Reyes ("Lopez-Reyes") is charged with one count of Reentry of Removed Alien, in violation of 8 U.S.C. § 1326. (Doc. 8.) Lopez-Reyes has now filed a motion under 8 U.S.C. § 1326(d) to dismiss the Indictment (Doc. 17), the government has filed an opposition (Doc. 22), and Lopez-Reyes has filed a reply (Doc. 25). As explained below, the motion will be denied.

## FINDINGS OF FACT

A. <u>Background Facts</u>

In September 1988, Lopez-Reyes was born in Mexico. (Doc. 17 at 4.)

In or around 1992, when Lopez-Reyes was four years old, he was brought to the United States by his mother. He eventually attended elementary school, middle school, and high school in Arizona despite lacking legal status in the United States. (Doc. 17 at 4; Doc. 17-5 ¶¶ 1-8.)

B. <u>The August 2007 Stabbing Incident</u>

On August 11, 2007, during the summer between his junior and senior years of high

school, Lopez-Reyes was in a park in Maryvale, Arizona when a knife fight broke out. (Doc. 17 at 4-5.) As Lopez-Reyes was attempting to walk away, he was stabbed twice in the back. (*Id.*) This attack caused Lopez-Reyes to sustain serious injuries requiring hospitalization. (*Id.*)

Shortly after the incident, members of the Phoenix Police Department ("PPD") conducted an interview of "Ernie," another person who'd been victimized during the attack. (Doc. 17-3 at 10.) Ernie described the assailant "as approximately 5'8 to 5'10, 18 to 20, with spiky hair" and "said he could probably ID this Hispanic male again if he saw him." (*Id.*)

PPD detectives also interviewed another witness. She initially "said that she could identify the Hispanic male that had the knife and will testify." (Doc. 17-3 at 11-12.) Later, she identified the assailant by name: "She said his name was Craig, but he went by C.J. She said that she had gone to Tolleson High School with him, and also worked with him [at a pizza parlor]." (*Id.* at 22-23.) She also told the police where they could find the assailant and provided his cell phone number: "She stated that she didn't know his full name, but knew the apartments where he lived . . . . She checked her phone and found his number." (*Id.* at 24.)

Lopez-Reyes was also interviewed as part of the PPD investigation. (Doc. 17-3 at 27-30.) He initially told the police that "he did not know the individual who had stabbed him." (*Id.* at 28.) Following the interview, the PPD detective realized this was a lie: "After I had initially interviewed [Lopez-Reyes], I compared my interviews [to] the interviews that other investigators involved in this incident had conducted. I then learned that the females who had been in the vehicle with [Lopez-Reyes] had indicated that the person who stabbed [Lopez-Reyes] was known to them and possibly [Lopez-Reyes] as well." (*Id.* at 29.) Accordingly, the PPD detective went back to Lopez-Reyes's hospital room to re-interview him. During this follow-up session, Lopez-Reyes acknowledged "that it was a person who he knew from Tolleson High School as 'CJ'" but "did not tell [the PPD

detective] why he had initially lied . . . about knowing who had stabbed him." (*Id.*)[1]

The knife-wielding assailant was apparently never prosecuted[2] and Lopez-Reyes never provided any further assistance to the police. In a report dated October 25, 2007, a PPD detective noted that "I had not heard from [one particular victim] or any of the other victim or witnesses in this case. Several phone messages have been left for them. It appears as [though] the victim and witnesses may not cooperate with the prosecution of this case." (Doc. 17-3 at 55.)

Lopez-Reyes has never applied for a U-Visa based on this incident and never attempted to obtain certification from the PPD concerning his assistance. (Doc. 17 at 12.)

C. <u>The Armed Robbery Conviction</u>

During October and November 2010, Lopez-Reyes committed a series of robberies of cellular phone stores. (Doc. 17 at 6.) During these robberies, he utilized an airsoft pistol. (*Id.*)

In July 2011, Lopez-Reyes was convicted of three counts of Armed Robbery in Maricopa County Superior Court and sentenced to a seven-year term of imprisonment. (Doc. 17 at 6; Doc. 22-1.)

D. <u>The Immigration Proceedings</u>

On July 15, 2011, Lopez-Reyes signed a form entitled "Notice of Intent to Issue a Final Administrative Removal Order." (Doc. 17-4.) On the second page of this form, a check-mark appears next to a provision stating: "I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the charges against me. I do not wish to request withholding or deferral or removal. I wish to be removed to

---

[1] Lopez-Reyes has submitted a declaration in which he suggests he didn't really lie to the PPD detective. (Doc. 17-5 ¶ 15.) The Court rejects this self-serving characterization of the interview—the PPD detective made a point of saying, in his report, that Lopez-Reyes had lied.

[2] The parties' briefs don't definitively state whether "C.J." was ever prosecuted, but the Court infers from Lopez-Reyes's discussion of his Accurint search (Doc. 17 at 5)—which doesn't mention any details of a criminal prosecution—that no legal proceedings were ever instituted.

Mexico." (*Id.* at 2.)

On January 18, 2017, after serving his state prison sentence, Lopez-Reyes was removed to Mexico. (Doc. 8.)

**ANALYSIS**

"An alien charged with illegal reentry under § 1326 has a Fifth Amendment right to collaterally attack [his] removal order because the removal order serves as a predicate element of [his] conviction." *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 755 (9th Cir. 2015) (citation omitted). "That right is codified at 8 U.S.C. § 1326(d)." *Id.* One way to prevail on such a collateral attack is to show that (1) the final order of removal was entered in violation of the defendant's due process rights and (2) the defendant suffered prejudice resulting from the violation. *Id.* at 756.

Here, although the parties advance an array of arguments concerning whether Lopez-Reyes's due process rights were violated during his removal proceeding—Lopez-Reyes contends his right to counsel was violated because he never affirmatively waived that right and didn't, in any event, make a knowing and intelligent waiver (Doc. 17 at 7-11)—the Court finds it unnecessary to resolve those arguments. This is because Lopez-Reyes cannot show prejudice.

In his motion, Lopez-Reyes contends his status as a victim of, and witness to, the 2007 stabbing incident would have rendered him eligible for a U-Visa and that it's "plausible" he would have obtained one (and, thus, avoided removal) had he been assisted by an attorney during his immigration proceedings. (Doc. 17 at 10-13.) In support of his motion, Lopez-Reyes provided a declaration from Margarita Silva, an Arizona-based immigration attorney. (Doc. 17-5.) Ms. Silva states that the PPD "signs U certifications in the true spirit of the U visa program" and that "my opinion [is] that in July 2011, Mr. Reyes Lopez had . . . [a] plausible ground for relief in the form of a U visa" due to "the severity of the assault in this matter (a stabbing) and that Mr. Reyes Lopez gave a statement to the police, identified the attacker to the extent that he could, allowed a search of his vehicle and stated his intent to prosecute the case." (*Id.* ¶¶ 4-8.)

In its response, the government contends that, regardless of whether Lopez-Reyes could have obtained a U-Visa certification document from the PPD, his prejudice claim fails because he also would have needed to obtain a discretionary waiver from the federal government and it's not plausible he would have obtained such a waiver in light of his multiple convictions for armed robbery, the absence of "any on-going proceedings in 2011," and the absence of proof that his "cooperation actually assisted in the prosecution of anyone." (Doc. 22 at 11-13.) In support of its response, the government provided a declaration from Michaelyn Potter, an official from United States Citizenship and Immigration Services ("USCIS"). (Doc. 22-7.) Among other things, Ms. Potter's declaration explains that "[w]hen determining whether to exercise discretion to waive criminal related inadmissibility grounds, USCIS will consider the number and severity of the offenses of which the alien has been convicted. For cases that involve violent or dangerous crimes or related to national security, USCIS will only exercise favorable discretion . . . in extraordinary circumstances." (*Id.* ¶ 11.)

In his reply, Lopez-Reyes argues the Potter declaration is unavailing because it "merely states the governing legal standards" and "offers neither statistics nor anecdotes—nor any evidence or even any assertions—regarding the plausibility of a person with Mr. Lopez's record obtaining an inadmissibility waiver." (Doc. 25 at 9.) In support of his reply, Lopez-Reyes provided a new declaration from Laura Lichter, an Arizona-based immigration attorney. (Doc. 25-3.) Among other things, Ms. Lichter avers that "I have been aware of a number of cases with similarly serious criminal history and related discretionary factors as that of Mr. Lopez Reyes who successfully pursued waivers, even after having been deemed to have been convicted of a 'violent or dangerous' offense." (*Id.* ¶ 15.) Ms. Lichter also states that one of the factors that would have supported Lopez-Reyes's request for a waiver was "[t]he critical nature of his cooperation in investigating the crime." (*Id.* ¶ 16(i).) Later on, Ms. Lichter adds that Lopez-Reyes's "bravery and self-sacrifice" when "cooperat[ing] with law enforcement" would have bolstered his case for a waiver. (*Id.* ¶ 18.)

Lopez-Reyes's collateral attack under 8 U.S.C. § 1326(d) fails because he cannot demonstrate prejudice. Both of his experts' opinions are based on an inaccurate factual premise—that he provided "critical" assistance to the police in their investigation and prosecution of the 2007 stabbing incident. This is simply not true. Lopez-Reyes was one of multiple witnesses who were interviewed in the aftermath of that incident. Other witnesses were initially very helpful. Indeed, one witness identified the assailant by name, told the police where the assailant lived, and even provided the police with the assailant's phone number. Lopez-Reyes, in contrast, was the only witness who was singled out by the police as having lied to them. Furthermore, although Lopez-Reyes initially suggested he was willing to assist in the prosecution, the case fell apart after he and the other witnesses refused to return the PPD detective's messages.

Lopez-Reyes's position is also undermined by the seriousness of his criminal history. He committed a string of armed robberies in 2010 that resulted in a seven-year state prison sentence. Although the weapon he used during those robberies was an airsoft pistol, not a real gun, his crimes were still quite serious.

With this background in mind, it is not "plausible" that Lopez-Reyes would have secured a discretionary U-Visa waiver from the federal government in 2011 had he been represented by counsel during his immigration proceedings. Although Lopez-Reyes's experts disagree with Ms. Potter over just how difficult it is to obtain such a waiver, the bottom line is that Lopez-Reyes would have represented a particularly poor candidate—a three-time armed robber whose half-hearted efforts to cooperate with the police concerning an earlier crime were marred by lies and a failure to follow through when it counted.

This outcome is consistent with Ninth Circuit law. In *Cisneros-Rodriguez*, the Ninth Circuit considered a § 1326(d) challenge by another defendant whose theory was that "she was prejudiced by the due process violation [during her removal proceeding] because, had she obtained counsel, it is plausible that she would have applied for and obtained a U-visa." *Id.* at 759. The court explained that, to demonstrate prejudice in this context, a defendant must demonstrate the existence of a "plausible" ground for relief from

deportation—a standard the court further defined as "more than possible" but not "probable." *Id.* at 761. The court concluded that, although the issue of plausible entitlement presented a "close[] question," the defendant had succeeded in establishing it because (1) she had been the victim of an extortion offense and served as "a critical witness in the prosecution" of the offender[3] and (2) her criminal record, although "substantial," consisted mostly of non-drug related crimes[4] and she "had never been sentenced to more than nine months in county jail" before becoming enmeshed in the drug-related activity of the woman who was extorting her. *Id.* at 762. Here, in contrast, Lopez-Reyes didn't provide much assistance to the police (let alone testify in a court proceeding that resulted in a conviction) and his criminal history is substantially more serious and troubling.

For these reasons, this case more closely resembles *United States v. Trinidad Hernandez*, 759 Fed. App'x 590 (9th Cir. 2018), a recent unpublished decision by the Ninth Circuit involving another § 1326(d) challenge premised on a U-Visa eligibility theory. There, the court concluded that "Hernandez's claimed entitlement to a U-Visa is not plausible" because "[h]er case presents less sympathetic facts than *Cisneros-Rodriguez*, where this Court described the issue of plausible entitlement to a U-Visa as a 'close[] question.'" *Id.* at 593. Specifically, the court noted that the defendant had been "sentenced on three occasions to substantial periods of incarceration" and "does not appear to have been substantively helpful in the prosecution of her husband on domestic violence charges," as she merely "initially cooperated when questioned" but "does not claim to have been a witness in proceedings against him." *Id.* Those, of course, are the same circumstances presented here.

Finally, the three district court decisions cited in Lopez-Reyes's briefs are factually distinguishable because they involved defendants with less severe criminal records than

---

[3] Specifically, the defendant in *Cisneros-Rodriguez* forwarded reports of the extortion to the Santa Clara County Sheriff's Office and then "testified at a preliminary hearing." *Id.* at 752. This testimony persuaded the judge to make a probable cause finding, which in turn prompted the extortionist to plead guilty. *Id.*

[4] The earlier crimes consisted of "a number of California state misdemeanors" and "felony and misdemeanor fraud." *Id.* at 751.

Lopez-Reyes who provided more significant assistance to law enforcement than Lopez-Reyes. For example, in *United States v. Aguilar-Moya*, 2018 WL 3659304 (N.D. Cal. 2018), the defendant was the victim of a robbery offense who called the police to report the crime and later "testified at the preliminary hearing." *Id.* at *1, *6-7. The court found that the defendant's reporting and testimony were critical in securing the conviction of the robber. *Id.* Additionally, the defendant's criminal history did not include any "violent and dangerous" offenses—the offense discussed in the opinion consisted of a "non-violent" offense that "did not involve a weapon" and resulted in "no jail time." *Id.* at *7-8. Similarly, in *United States v. Cervantes*, 2016 WL 6472108 (C.D. Cal. 2016), the defendant obtained a formal certification document from county officials confirming she was a victim of, and had cooperated in the investigation of, certain underlying crimes, *id.* at * 3 & n.1, and her most serious criminal conviction was for a non-violent drug offense that resulted in a sentence less than half the length of Lopez-Reyes's sentence. *Id.* at *1. And in *United States v. Rusuleo-Flores*, 2012 WL 761701 (N.D. Cal. 2012), the defendant was a rape victim whose reporting led to the arrest of her assailant and who later agreed to "wear[] a wire" to assist ICE "in gang investigations." *Id.* at *8, *11.[5] Additionally, the defendant's worst conviction was for a theft offense that carried a sentence of less than eight months in county jail. *Id.* at *2.

Accordingly, **IT IS ORDERED** that Lopez-Reyes' Motion to Dismiss the Indictment (Doc. 17) is **denied**.

Dated this 26th day of June, 2019.

Dominic W. Lanza
United States District Judge

---

[5] Although the defendant in *Rusuleo-Flores* later recanted her allegations against her assailant, which resulted in the criminal charges being dismissed, the district court concluded she still deserved credit for being helpful to law enforcement because she was only 14 years old at the time, she'd been pressured by family members to recant the allegations, and "the statute and regulations explicitly contemplate a lower standard of helpfulness for victims under 16, particularly as applied to these facts." *Id.* at *10.